IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:22-cv-00217

| | |
|---|---|
| MARIAMA NADIRA ALI, individually and as the representative of a class of similarly-situated persons,<br><br>                  Plaintiff,<br>    v.<br><br>ASSURANCE IQ, LLC, a Washington limited liability company, and PRUDENTIAL FINANCIAL, INC., a New Jersey corporation,<br><br>                  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

Plaintiff Mariama Nadira Ali ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint (the "Complaint") against Defendants Assurance IQ, LLC and Prudential Financial, Inc. ("Defendants"), and alleges, upon personal knowledge as to her own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1. Plaintiff brings this Complaint against Defendants to secure redress because Defendants willfully violated the Telephone Consumer Protection Act, 47 U.S.C § 227, *et seq.* ("TCPA" or "Act"), invaded Plaintiff's privacy by causing unsolicited calls to be made to Plaintiff's and other class members' cellular and residential telephones through the use of a pre-recorded or artificial voice message, and called Plaintiff's cellular telephone without prior written express consent.

2. Defendants made one or more unauthorized calls to Plaintiff's cell phone using a pre-recorded voice for the purpose of soliciting life insurance business from Plaintiff.

3. The TCPA was enacted to protect consumers from unsolicited telephone calls and unsolicited messages exactly like those alleged in this case. In response to Defendants' unlawful conducts, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers, and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, prejudgment interest, and treble damages (for knowing and/or willful violations).

## JURISDICTION AND VENUE

4. The Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful tortious conduct alleged in this Complaint occurred in and/or emanated from this District.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 because this case involves federal questions.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

7. Defendants are subject to specific personal jurisdiction in this District because they have continuous and systematic contacts with this District through their telemarketing efforts. Therefore, the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

## PARTIES

8. Plaintiff, Mariama Nadira Ali, is a citizen of Raleigh, North Carolina.

9. Defendant, Assurance IQ, LLC, is a Washington limited liability company with its principal place of business in Bellevue, Washington.

10. Defendant, Prudential Financial, Inc., is a New Jersey corporation with its headquarters located in Newark, New Jersey.

11. Assurance IQ, LLC is registered to do business in the state of North Carolina.

12. Assurance IQ, LLC a wholly owned subsidiary of Prudential Financial, Inc. matches buyers with products such as life and health insurance and auto insurance, enabling them to make purchases online or through an agent. https://news.prudential.com, last visited May 23, 2022.

13. Whenever in this Complaint it is alleged that Defendants committed any act or omission it is meant that Defendants' officers, directors, members, managers, employees, and/or agents committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of Defendants' officers, directors, members, managers, employees, and agents.

## LEGAL BASIS FOR THE CLAIMS

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy...." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

15. Specifically, the TCPA restricts telephone solicitations (*i.e.*, telemarketing) and the use of automated telephone equipment. The TCPA also limits the use of artificial or prerecorded voice messages, and fax machines. It also specifies several technical requirements

3

for voice messaging systems–principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

16. All pre-recorded telemarketing calls to residential lines and to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

17. As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>, the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

    a. Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

    b. Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

    c. Prohibit solicitations to residences that use an artificial voice or a recording.

    d. Prohibit any call made using an artificial or prerecorded voice to a wireless device or cellular telephone.

    e. Prohibit any call made using an artificial or prerecorded voice to a cellular telephone, or any service for which the recipient is charged for the call.

18. Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

19. An entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity making the call on its behalf.

20. Finally, with respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

## COMMON FACTUAL ALLEGATIONS

21. Defendant Assurance IQ, LLC is a direct-to-consumer platform offering various insurance products of its parent company, Prudential Financial, Inc. Unfortunately for consumers, Defendants utilized (and continue to utilize) a sophisticated telephone dialing system to call *en masse* promoting its services. On information and belief, Defendants obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers.

22. In Defendants' overzealous attempt to market its services, it placed (and continues to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendants. Defendants knowingly made (and continue to make) these telemarketing calls without the prior express written consent of the call recipients. In fact,

5

Defendants made and continued to make their telemarketing calls even after Plaintiff complained about the calls. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the Class, but also intentionally and repeatedly violated the TCPA.

23. On or about December 17, 2021, Defendants contacted Plaintiff on her cellular telephone number with a prerecorded voice message without first obtaining Plaintiff's written consent. The calls continued thereafter, including but not limited to December 22, 2021, December 23, 2021, December 26, 2021, January 8, 2022, January 9, 2022, January 14, 2022 and January 15, 2022.

24. Plaintiff continued to receive prerecorded calls from Defendants after Plaintiff told Defendants to stop. The prerecorded calls came from telephone number 252-351-1265.

25. Plaintiff was able to answer at least one of the calls and interact first with Defendants' artificial or pre-recorded or artificial voice message, which was as follows:

> Hi, I'm from Assurance and am following up with your national family request. Assurance is a part of Prudential and we've analyzed your situation. And they have a great life insurance plan (sic). When you have a moment, give us a call back and we can connect you with one of our licensees. Call us back at 844-986-3881.

26. Plaintiff understood the purpose of Defendants' calls was to have Plaintiff submit an application for life insurance offered by Defendants.

27. Plaintiff is the exclusive user of the cellular telephone that Defendants called.

28. Defendants' calls to Plaintiff constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(l)(A)(i).

29. Plaintiff did not provide Defendants with prior express written consent to receive calls to her cellular telephone utilizing an artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

30. Defendants' calls which each utilized an artificial or pre-recorded voice made to Plaintiff invaded Plaintiff's privacy and violated 47 U.S.C. § 227(b)(1).

31. Plaintiff has reason to believe Defendants have called, and continue to call, thousands of wireless and residential telephone consumers to market their products and services without consent required by the TCPA.

## COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## U.S.C. § 227 FOR THE USE OF A PRERECORDED VOICE

32. Plaintiff restates, realleges and incorporates by reference paragraphs 1 - 31 as if each were fully set forth herein.

33. Defendants made unsolicited and unauthorized calls using a prerecorded voice to Plaintiff's and the Class members' cellular and residential telephones for the purpose of marketing their life insurance products and/or services to Plaintiff and the Class.

34. Defendants made the calls without obtaining prior express written consent from Plaintiff and the Class.

35. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

36. Defendants' conduct invaded Plaintiff's privacy.

37. As a result of Defendants' violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

38. Because Defendants had knowledge that Plaintiff and the Class did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the Class.

39. Plaintiff and the class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

40. Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of:

> All persons in the United States who received a call made by or on behalf of Defendants to the individual's cellular or residential telephone through the use of a pre-recorded voice, from four years prior to the date of filing of this Complaint until the date Defendants' conduct ceases, where the call(s) were made without prior express written consent from the recipient to make such call.

Excluded from the class are employees, agents, officers, directors, members, managers of Defendants as well as members of the judiciary.

41. Plaintiff reserves the right to modify the class definition as the contours and parameters of the class become apparent through discovery in this matter.

42. Plaintiff and the Class members were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through their agents, illegally contacted Plaintiff and the Class via their cellular or residential telephones, thereby causing Plaintiff and the Class to incur certain cellular or residential telephone charges or reduce cellular or residential telephone time for which Plaintiff and the Class members previously paid; Defendants' calls included a prerecorded message; and Plaintiff and Class members' privacy was invaded.

43. The exact size of the Class is presently unknown but can be ascertained through a review of Defendants' records, and it is clear that individual joinder is impracticable. On

information and belief Defendants made telephone calls to thousands of consumers who fall within the definition of the Class.

44. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

45. Common questions for the Class include, without limitation:

   a. Whether Defendants sent non-emergency prerecorded calls to Plaintiff and the other members of the class;

   b. Whether Defendants' conduct violated the TCPA;

   c. Whether Defendants systematically made telephone calls to consumers who did not previously provide Defendants and/or their agents with prior express written consent to receive such phone calls after;

   d. Whether Defendants systematically made telephone calls to consumers using a pre-recorded voice to any telephone number assigned to a cellular or residential phone service without prior express written consent of the called party;

   e. Whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct;

   f. Whether Defendants systematically made telephone calls to consumers using a pre-recorded voice to any telephone number assigned to a cellular or residential phone service without prior express written consent of the called party;

      g. Whether Defendants and their agents should be enjoined from engaging in such conduct in the future; and

      h. Whether Defendants are liable for statutory damages for each call.

46. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct by sending prerecorded voice messages to cellular and residential phones belonging to Plaintiff and the Class.

47. Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions.

48. Plaintiff has no interests which conflict with or antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

49. This class action is appropriate for class certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and making an award of damages and final injunctive relief appropriate with respect to Plaintiff and the Class as a whole.

50. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

51. This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because:

a. Proof of Plaintiff's claims will also prove the claims of the Class without the need for separate or individualized proceedings;

b. Evidence regarding defenses or any exceptions to liability that Defendants may assert and attempt to prove will come from Defendants' records and will not require individualized or separate inquiries or proceedings;

c. Defendants have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class members;

d. The amount likely to be recovered by individual Class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

e. The case is inherently manageable as a class action in that:

   i. Defendants identified persons or entities to receive the unauthorized prerecorded messages and Defendants' computer and business records will likely enable Plaintiff to readily identify class members and establish liability and damages;

   ii. Liability and damages can be established for Plaintiff and the Class with the same common proofs;

   iii. Statutory damages are provided for in the statute and are the same for all Class members and can be calculated in the same or a similar manner;

   iv. A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort, and expense;

v. A class action will contribute to uniformity of decisions concerning Defendants' practices; and

vi. As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Mariama Nadira Ahi, individually and on behalf of the Class, respectfully requests the following relief against Defendants, Assurance IQ, LLC and Prudential Financial, Inc., jointly and severally,

a. An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Law Offices of John T. Orcutt, P.C. and Anderson + Wanca as Class Counsel.

b. An award of statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c. An award of statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

d. Pre-judgment interest from the date Defendants' statutory torts were committed until the date of judgment;

e. An award of reasonable attorneys' fees and court costs in this action;

f. All other and further relief as the Court deems necessary, just, and proper.

## **JURY DEMAND**

Plaintiff and the Class demand a jury trial on all issues so triable.

Dated: May 31, 2022                    Respectfully Submitted,

/s/ Craig Shapiro
Craig Shapiro (State Bar No. 48887)
**The Law Offices of John T. Orcutt, P.C.**
1738 Hillandale Road, Suite D
Durham, NC  27705
Email: cshapiro@johnorcutt.com
Telephone: (919) 286-1695

Ryan M. Kelly
**Anderson + Wanca**
3701 W. Algonquin Rd. Ste#500
Rolling Meadows, IL 60008
Email:  rkelly@andersonwanca.com
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
(*Special Appearance to be filed*)